**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**
**CENTRAL DIVISION**

| | |
|---|---|
| JANINE M. HILLMAN,<br><br>            Plaintiff,<br><br>     v.<br><br>MICHAEL HANSEN et al.,<br><br>            Defendants. | Case No. 2:03-CV-2 TC<br><br><br>MEMORANDUM DECISION<br>AND ORDER |

Plaintiff, Janine M. Hillman, currently incarcerated in the State of Nevada, filed this *pro se* civil rights suit under 42 U.S.C. § 1983 while at the Utah State Prison.  *See* 42 U.S.C.S. § 1983 (2005).  This case is now before the Court on Defendants' motion for summary judgment.

## ANALYSIS

### I. Procedural Background

Plaintiff's original complaint, filed on January 2, 2003, named Michael Hansen, formerly a correctional officer at the Utah State Prison, as the sole defendant.  On February 26, 2004, following several unsuccessful attempts to contact Plaintiff at the Utah State Prison, the Court dismissed this case based on Plaintiff's failure to keep the Court informed of her current address.  Nearly seven months later, Plaintiff filed a motion to reopen the case, stating that she had been transferred to the State of Nevada.  The Court granted Plaintiff's motion and

ordered official service of process upon Michael Hansen at the Utah Department of Corrections (UDOC). According to the return of service filed by the U.S. Marshal, attempts to serve Hansen failed because UDOC officials stated they had no information regarding him.[1] Plaintiff then filed an Amended Complaint naming four additional UDOC defendants, each of whom were properly served. Defendants responded to the Amended Complaint with a motion to dismiss. On July 19, 2005, the Court granted the motion to dismiss as to Clint Friel and Annabel Fackrel and directed the Utah State Prison to file a *Martinez* report addressing Plaintiff's allegations against the remaining Defendants.[2] In conjunction with the *Martinez* report Defendants

---

[1] Defendants' motion for summary judgment challenges the Court's jurisdiction over Michael Hansen, arguing that Hansen has not been properly served. Plaintiff's opposition brief does not address this issue, however, it does appear that there are grounds for asserting jurisdiction over Hansen. First, defense counsel previously made an appearance for Hansen by filing a motion on his behalf. (Doc. no. 16.) Second, Hansen was clearly made aware of the claims against him, and it does not appear that he has been prejudiced by the lack of personal service. The *Martinez* report includes Hansen's sworn affidavit and specifically addresses the allegations against him, arguing that summary judgment in favor of Wiechman and Pace would effectively make the claims against Hansen futile. Finally, it appears that the initial effort to serve Hansen failed partly due to inaccurate information provided by UDOC officials. Based on these considerations, the Court declines to take up Hansen's jurisdictional argument at this time. Hansen may reassert his jurisdictional challenge if the Court finds that he is not entitled to summary judgment.

[2] In *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), the Tenth Circuit approved the district court's practice of ordering prison administrators to prepare a report to be included with the

also filed the present motion for summary judgment.  Plaintiff has responded to Defendants' motion which is now properly before the Court.

## II. Factual Record

Plaintiff's claim stems from an incident which occurred at the Utah State Prison (USP) on January 9, 2001, when Plaintiff was transferred to a new cell and assigned to a top bunk. Plaintiff was transferred from the bottom bunk in cell 109 (109B) to the top bunk in cell 104 (104T).  At the time of the incident Plaintiff was sixty-nine years old.  The record shows that Plaintiff's transfer was part of a mass inmate move conducted in the Timpanogos Four housing unit, which was necessary to accommodate several inmates being transferred in from another unit.  For security reasons prison officials try to ensure that inmates with similar prisoner classifications are housed together.  This often requires that those already housed in the unit be shuffled around to accommodate new arrivals.  Plaintiff was one of approximately thirty inmates in her unit who received new cell assignments on the day in question.

Prior to being moved, Plaintiff informed Defendant Hansen, who was responsible for coordinating the transfers, that she could not safely climb onto a top bunk due her age and physical

---

pleadings in cases where a prisoner alleges a constitutional violation by prison officials.

condition.  Acting on Plaintiff's concerns Hansen contacted the infirmary to determine whether Plaintiff, in fact, had a medical clearance for a bottom bunk.  After being informed that Plaintiff did not have a bottom bunk clearance Hansen ordered Plaintiff to relocate to the new cell despite her concerns.[3]  Upon reaching the new cell Plaintiff found that the bottom bunk was already occupied by another inmate who did have a bottom bunk clearance.

Later the same day Plaintiff complained about her upper bunk assignment to Defendant Pace, who was working as a housing officer in the Timpanogos Four unit at the time.  Pace states that she also asked Plaintiff for her bottom-bunk clearance but Plaintiff was unable to produce one.  Pace apparently took no further action on Plaintiff's complaint.  Although Pace states that the a matter was later referred to a supervisor, Pace acknowledges that she was not present at, and did not participate in, any meetings with superior officers regarding Plaintiff's housing situation.

Following her unsuccessful attempts to resolve her concerns with Hansen or Pace, Plaintiff took the matter up with Defendant Wiechman, who was the lieutenant in charge of the Timpanogos Four unit, and Hansen's direct supervisor, at the time.  Wiechman

---

[3] According to the *Martinez* report, Plaintiff would have been granted a bottom bunk clearance based solely on her age if she had applied for one.  However, prison records do not show that Plaintiff ever applied for such a clearance prior to this incident.

4

spoke to Hansen who reported that he had contacted the infirmary and confirmed that Plaintiff did not have a bottom bunk clearance.  Wiechman then contacted the infirmary herself and was also told that Plaintiff did not have, and had never applied for, the required clearance.  Based on this information, and Wiechman's own assessment that Plaintiff was physically capable of using a top bunk, Wiechman decided not to perform an "after hours move" which would have required special approval.  Instead, Wiechman offered Plaintiff the option of placing her mattress on the floor for the night and ordered unit staff to move Plaintiff to a bottom bunk the following day.  Wiechman also instructed Plaintiff regarding the proper procedure for obtaining a bottom bunk clearance from the infirmary so as to avoid similar confusion in the future.

   Plaintiff apparently declined the option of placing her mattress on the floor for the night, and, she alleges that while trying to climb down from the top bunk during the night she fell and injured her shoulder.  Plaintiff was transferred to another cell and assigned a lower bunk on January 10, 2001, after spending just one night assigned to bunk 104T.  Defendants each state that they do not recall Plaintiff ever notifying them that she had fallen while climbing off the top bunk that night.  Plaintiff filed a Healthcare Request Form officially seeking a bottom bunk clearance on January 11, 2001.  She did not mention

her fall or injury in that request. However, Plaintiff also filed a separate Healthcare Request Form on January 12, 2001, in which she states: "I think I have re-torn my left rotator cuff and or dislocated my clavicle coming down from the top bunk."[4] (Pla.'s Resp. Sum. J. Ex. 6.) Plaintiff was not seen by medical personnel regarding this request until January 17, 2001. (*Martinez* Rpt. Ex. A-27.) According to prison medical records Plaintiff visited the prison infirmary eight times between January 17, 2001, and April 2, 2001, regarding her shoulder. She received x-rays and was treated with injections and other prescribed therapy. Following Plaintiff's April 1, 2001 visit medical personnel noted there was "no need for further [work up] on [Plaintiff's] shoulder." (*Martinez* Rpt. Ex. A-25.) Plaintiff was subsequently transferred to the State of Nevada.

Plaintiff's Complaint alleges that Hansen deliberately assigned Plaintiff to an upper bunk, despite knowing that Plaintiff was unable to safely access it, in retaliation for an incident which occurred several days earlier on January 6, 2001. Plaintiff states that on that day Hansen wrote her up for having a plant-cutting in her cell which she was propagating on behalf

---

[4] Defendants' *Martinez* report asserts that Plaintiff did not make a healthcare request regarding her alleged injury until January 17, 2001. However, it appears that Defendants are mistakenly referring to the date on which Plaintiff was seen, rather than the date the request was filed. (*Martinez* Rpt. Ex. A-27.)

of a corrections officer.  Plaintiff alleges that the Offender Management Review (OMR) committee ultimately dismissed the write-up and admonished Hansen for issuing it, giving Hansen motive to retaliate against Plaintiff.  The *Martinez* report states that "USP records do not contain any references to a write-up or OMR hearing in connection with [Plaintiff's] plant cuttings." (*Martinez* Rpt. at 36.)  However, Plaintiff has submitted a copy of a letter dated April 11, 2001, sent by Bonnie Hartley, USP Case Manager, to Paula Miller, Nevada IPP Coordinator, recommending that Plaintiff be granted a transfer to Nevada.  In that letter Hartley specifically refers to the incident involving the plant-cuttings, noting that OMR ruled in Plaintiff's favor in that case.  The letter cites Plaintiff's belief that the incident showed a personal conflict between Plaintiff and Hansen as grounds for granting Plaintiff's transfer to Nevada.

Plaintiff asserts that Hansen's decision to assign Plaintiff a top bunk, and Defendants' subsequent failure to immediately transfer her once they became aware of her situation, constitute deliberate indifference to Plaintiff's health and safety, in violation of the Eighth Amendment.

### III. Summary Judgment Analysis

#### A. Standard of Review

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is

entitled to judgment as a matter of law." Fed. R. civ. P. 56(c). The moving party bears the initial burden of showing "that there is an absence of evidence to support the non-moving party's case." *Cellotex v. Catrett*, 477 U.S. 317, 325 (1986). This burden may be met merely by identifying portions of the record which show an absence of evidence to support an essential element of the opposing party's case. *Johnson v. City of Bountiful*, 996 F. Supp 1100, 1102 (D. Utah 1998).

Once the moving party satisfies its initial burden "the burden then shifts to the nonmoving party to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of [the disputed] element." *Id.* Federal Rule of Civil Procedure 56(e) requires a nonmovant "that would bear the burden of persuasion at trial" to "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1998). The specific facts put forth by the nonmovant "must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein." *Thomas v. Wichita Coca-Cola Bottling*, 968 F.2d 1022, 1024 (10th Cir. 1992). Mere allegations and references to the pleadings will not suffice. However, the Court must "examine the factual record and reasonable inferences

therefrom in the light most favorable to the party opposing the motion." *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999).

### B. Legal Standard for Conditions of Confinement Claims

The Eighth Amendment's prohibition on cruel and unusual punishment requires that prison officials "provide humane conditions of confinement by ensuring that inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee inmates' safety." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998).

An Eighth Amendment conditions-of-confinement claim consists of both an objective and subjective component. The objective component is met only if the condition complained of is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994). A condition is sufficiently serious if it poses "a substantial risk of serious harm" to the inmate. *Id.* Because the sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered." *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)). "While no single factor controls . . . the length of exposure to the conditions is often of prime importance." *Id.* As the severity of the

conditions to which an inmate is exposed increases, the length of exposure required to make out a constitutional violation decreases. Accordingly, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while substantial deprivations . . . may meet the standard despite a shorter duration." *Id.*

The subjective component of a conditions-of-confinement claim requires the plaintiff to show that the defendant exhibited "deliberate indifference" to the inmate's health or safety. *Farmer*, 511 U.S. at 832. Deliberate indifference "requires both knowledge and disregard of possible risks, a *mens rea* on a par with criminal recklessness." *Despain v. Uphoff*, 264 F.3d 965, 975 (10th Cir. 2001). The defendant must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

### C. Sufficiency of the Evidence

#### i. Objective Component: Substantial Risk of Serious Harm

Defendants argue they are entitled to summary judgment because the record does not show that Defendants subjected Plaintiff to conditions which posed a substantial risk of serious harm. Specifically, Defendants argue that assigning Plaintiff to a top bunk for one night, while giving her the option of placing her mattress on the floor temporarily, is not sufficiently

serious to satisfy the objective component of an Eight Amendment conditions-of-confinement claim.

There is little doubt that even a short-term assignment to a top bunk, which requires its user to repeatedly climb up and down a railing at night in close quarters, would pose a substantial risk of serious harm to an average woman of nearly seventy years of age.  This proposition is clearly supported by the prison's well established practice of routinely granting requests for lower bunk clearances to inmates of a certain age, regardless of their actual physical condition or perceived capabilities. Nevertheless, Defendants argue that based on their familiarity with Plaintiff's physical activities while in prison they had reason to believe the top-bunk assignment would not pose a serious threat to her.

The Court finds this argument entirely unpersuasive. Defendants readily admit that they have no medical expertise and that they are not qualified to evaluate inmates' medical needs or physical capabilities.  Defendants could not have reasonably concluded, based solely on Plaintiff's work or vocational activities that Plaintiff was able to safely access a top bunk. Thus, the Court concludes that, given Plaintiff's advanced age, knowingly assigning her to a top-bunk without providing her an alternative sleeping arrangement, would pose a sufficiently serious safety risk to satisfy the objective prong of the

deliberate indifference inquiry.

However, that does not appear to be what happened in this case. The record here shows that Plaintiff was not forced to use the top bunk, despite the initial assignment, because she was given the alternative of placing her mattress on the floor for one night before being relocated the next morning. At first blush, merely telling an inmate to sleep on the floor rather than providing a lower bunk might seem unreasonable. However, the Court finds that given the short duration involved here, and the lack of readily available alternatives, this accommodation was a reasonable means of mitigating any risk posed to Plaintiff in this instance. As other Courts have recognized, when an inmate is offered a viable, but perhaps less desirable, alternative to a potentially dangerous condition--rather than being forced into an "impossible situation in which he could not avoid pain or permanent injury"--the condition is not "sufficiently serious" to state an Eighth Amendment claim. *Williams v. Ramos*, 71 F.3d 1246, 1250-51 (7th Cir. 1995). Thus, the Court concludes based on the record before it that the risk faced by Plaintiff in this instance was not objectively "sufficiently serious" to state an Eighth Amendment claim.

### ii. Subjective Component: Deliberate Indifference

The record in this case also shows that Defendants were not deliberately indifferent to the danger Plaintiff faced. There is

no evidence that the Defendants ignored Plaintiff's concerns or refused to investigate her complaint.  Although the Supreme Court has held that a prison officer may be held liable "if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to exist," that did not occur here. *Farmer*, 511 U.S. at 843 n.8.  Instead, the record shows that Defendants each made independent efforts to verify Plaintiff's contention that she required a bottom bunk by giving her an opportunity to produce evidence of her clearance, which she failed to do, and by independently checking with the infirmary. The record shows that Hansen actually contacted the infirmary twice, once on his own, and again at Wiechman's insistence, to verify whether Plaintiff required a top bunk, and both times he was told that Plaintiff did not.  Although Hansen and Pace may not have shown the utmost solicitude for Plaintiff's safety, they clearly were not indifferent because they made some effort to verify whether Plaintiff had the required clearance.  In addition, it is not entirely clear from the record whether Hansen or Pace had authority to change Plaintiff's bunk assignment without the required clearance.  In any case, once the matter was referred to their supervising officer, Hansen and Pace could have justifiably assumed that no further action was required on their part.

    The record also shows that Wiechman, as the supervising

officer, was not deliberately indifferent to Plaintiff's plight. Wiechman responded promptly to Plaintiff's complaint and took immediate action to alleviate the risk to Plaintiff.  After verifying that Plaintiff in fact did not have the required clearance, Wiechman arranged for Plaintiff to place her mattress on the floor for the night, and she ensured that Plaintiff's cell assignment would be changed the following day.  Although the alternative arranged by Wiechman may not have been ideal from Plaintiff's perspective, the Court finds it was reasonable under the circumstances, given other penological and logistical concerns.  There is nothing in the record showing that the accommodation provided by Wiechman was intended to cause Plaintiff harm, or was otherwise untenable.  Thus, the Court concludes that the record in this case does not support a finding of deliberate indifference by Defendants.

**ORDER**

Based on the foregoing, the Court concludes that Plaintiff has not satisfied her burden of coming forward with specific facts showing that the Defendants were deliberately indifferent to a serious risk to Plaintiff's health or safety.  Thus, the Court finds that there is no genuine issue of material fact remaining in this case and Defendants are entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56.

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED**.

DATED this 19th day of January, 2007.

BY THE COURT:

*Tena Campbell*

_____
Tena Campbell
Chief Judge